**H & H SHIP SERVICE CO., Appellant,**

v.

**WEYERHAEUSER LINE, a division of Weyerhaeuser Company, a corporation, Appellee.**

**No. 21487.**

United States Court of Appeals
Ninth Circuit.

Aug. 29, 1967.

Graham, James & Rolph, Lester H. Clark, San Francisco, Cal., for appellant.

Lillick, Geary, Wheat, Adams & Charles, Frederick W. Wentker, Jr., San Francisco, Cal., for appellee.

Before JOHNSEN,* BARNES and ELY, Circuit Judges.

BARNES, Circuit Judge.

In June of 1963 appellee Weyerhaeuser Line (hereinafter "Weyerhaeuser") orally contracted with appellant H & H Ship Service Company (hereinafter "H & H") to do certain cleaning, scraping and painting aboard the SS F. E. WEYERHAEUSER. On June 20 a crew of ship cleaners employed by H & H, and under the supervision of Robert E. Grant, boarded the vessel to begin the job. The crew was engaged in bringing their equipment aboard when Stephen Mandle, Weyerhaeuser's Assistant Port Engineer, asked Grant to accompany him into the

* Hon. Harvey M. Johnson, Senior Judge, U. S. Court of Appeals for the Eighth Circuit, sitting by designation.

No. 1 hold so that he, Mandle, could show Grant the places where work was needed. Grant indicated that he had no light and sent one of the H & H employees for a light. Mandle said he had a light and repeated his request that Grant accompany him into the No. 1 hold. After Mandle had persisted in his request several times, Grant agreed to accompany him into the hold with only Mandle's light. Grant thought that one light was sufficient to safely inspect the hold, unless the man with him "didn't know anything about a ship." However, it was tacitly stipulated at the trial that one light was inadequate. (R.T. p. 84.)

The SS F. E. WEYERHAEUSER is a modified "Liberty" type vessel. As originally constructed its No. 1 hold had three compartments: the "upper 'tween decks", the "lower 'tween decks" and the "deep tanks". Each level extended the entire width of the ship. Weyerhaeuser, however, modified the ship by removing almost all of the floor of the "lower 'tween decks", which was also the top of the "deep tanks". Thus the two lower compartments were made into one. The only part of the floor of the "lower 'tween decks" left in place was a strip running along the centerline of the ship which was retained for structural safety. (This centerline strip will be referred to herein as the "narrow peninsula", as it was in the court below.) There was an access trunk ladder on the aft bulkhead of No. 1 hold leading down to this narrow peninsula. The narrow peninsula was about 12 feet above the bottom of the "deep tanks."

Mandle entered the No. 1 hold by the access trunk ladder and descended to the narrow peninsula using his flashlight to light the way. When he was safely down, he shed the light on Grant as he descended. When Grant reached the narrow peninsula Mandle aimed the light to the sides of the vessel to show Grant where the work was needed. Mandle began to move aft and used the flashlight to light his way. He intended to use the light to show Grant the way, but before he could do so Grant stepped to port and fell to the bottom of the "deep tanks".

Grant filed a libel against Weyerhaeuser for his injuries and Weyerhaeuser filed a libel against H & H for indemnity. The two were consolidated by order of the court. Grant settled his libel and the action proceeded only as to the libel for indemnity. Weyerhaeuser prevailed and was awarded indemnity from which H & H appeals. The district court had jurisdiction under 28 U.S.C. § 1333, and we have jurisdiction of the appeal under 28 U.S.C. § 1291.

As grounds for reversal H & H asserts that: (1) the warranty of workmanlike service did not arise, and (2) even if the warranty arose, Weyerhaeuser's conduct precluded indemnity. We find no merit in either assertion and affirm.

## I. *The Warranty of Workmanlike Service*

H & H concedes that this case is akin to the stevedore cases holding that when a stevedoring firm undertakes the loading or unloading of cargo, there arises a warranty that the stevedore will do the work properly and safely. Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S. Ct. 438, 2 L.Ed.2d 491 (1958), Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956). Clearly these principles apply to contracts for ship repairs. See Albina Eng. & Machine Works, Inc. v. American Mail Line, Ltd., 263 F.2d 311 (9th Cir. 1959).

H & H asserts, however, that the implied warranty of workmanlike service is dependent upon the circumstances of the engagement, and that here the circumstances are such that a warranty would not arise. It is certain that the warranty is part of the contract, Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra, and is implied to the extent of the work done and control exercised by the ship repairer. Here it was part of Grant's job to inspect the job prior to assigning his men to the repairs. (Finding of Fact No. 12, C.T. pp. 89–90.) Super-

vision of the job was charged to H & H. *(Ibid.)* Grant had control of his own actions, though his job required him to cooperate with Mandle in inspecting the ship. Admittedly Grant was an experienced ship cleaning foreman. Contrary to what appellant tells us, the circumstances of this case relating to control, supervision and expertise do not suggest that a warranty of workmanlike service did not arise. As the district court found, it was Grant who had the best opportunity to avoid the accident. (See Finding of Fact No. 24, C.T. pp. 94–95.) [1] If "liability should fall upon the party best situated to adopt preventive measures and thereby reduce the likelihood of injury," Italia Societa, etc. v. Oregon Stevedoring Co., supra, 376 U.S. at 324, 84 S.Ct. at 754, the circumstances of this case require that the warranty of workmanlike service be recognized here.

## II. *Weyerhaeuser's Conduct*

In Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra, 355 U.S. at 567, 78 S.Ct. at 441, the Supreme Court suggested that the vessel owner was entitled to indemnification from a substandard performing stevedore, "absent conduct on its part sufficient to preclude recovery." The Supreme Court has not indicated what conduct will be sufficient to preclude recovery, and the question has given rise to some confusion. Compare Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co., 372 F.2d 674 (9th Cir. 1967), with Albanese v. N/V

Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (2d Cir. 1965), reversed on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L. Ed.2d 327 (1965). As we noted in the *Nordstjernan* case, *Albanese* stands for the proposition that indemnification cannot be precluded unless the vessel owner's conduct shall at the least "prevent or seriously handicap the stevedore" in doing a workmanlike job. We said in the *Nordstjernan* case that conduct which amounts to such a handicap may not necessarily preclude indemnification. Where the vessel owner's conduct does not amount to such a handicap, however, the vessel owner, as a matter of law, is not to be precluded from indemnification.

In the case at hand the court below found that Weyerhaeuser had not prevented or seriously handicapped H & H in doing a workmanlike job. (Finding of Fact No. 24, C.T. pp. 94–95.) That finding is supported by the evidence and not clearly erroneous. Weyerhaeuser's only failure was in Mandle's (a) failing to warn Grant of the altered construction of the No. 1 hold, and (b) requesting that Grant, with only one flashlight between them, accompany him into the hold. (Finding of Fact No. 23, C.T. p. 94.) But these could have handicapped Grant only if Mandle had *denied* him the right to use additional light in the hold or Mandle had *forced* Grant to proceed with inadequate lighting. The evidence shows that Mandle did no more than request that Grant accompany him,[2] and Grant

---

1. Finding 24 reads as follows:
    "24. Weyerhaeuser has neither prevented nor seriously handicapped proper performance by H & H of its maritime contract for ship cleaning, scraping and painting. All Grant had to do to have adequate light was wait a moment for Knox to bring Grant his hand flashlight, at which point he would have had his own light and could have lighted his own way into the hold, even though he did not know of the nature and extent of the alteration. And notwithstanding the fact that Grant did not have adequate light to enter into the hold, no accident would have occurred had Grant stood still in the darkness and waited for Mandle to light his way, as Mandle had done up

to that point, instead of attempting to walk into an area where his way had not been lighted."

2. Appellant seeks to stretch Compania Anomina Venezolano v. Matthews, 371 F.2d 971 (5th Cir. 1967), too far. There the court held that indemnity was precluded under the Weyerhaeuser corollary to the Ryan rule when the vessel owner had refused to permit the dangerous condition to be corrected and insisted that the stevedores continue in spite of the danger. Insistence or overbearance is far different than a mere request; and there is no evidence here that Mandle would not have allowed better lighting of the No. 1 hold had Mandle and Grant decided to await the H & H employee's return with the additional light.

admitted that he chose to proceed with only one light because he knew that Mandle was familiar with the ship. (R. T. pp. 47–48.) On the whole we cannot say that the court below was in error in concluding that H & H was not prevented or seriously handicapped in doing a workmanlike job.

The judgment is affirmed.